UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
ROBERT HANANBURGH,                                                :
                                                                  :
                             Plaintiff,                           :
                                                                  :
              -v-                                                 :
                                                                  :
METRO-NORTH COMMUTER RAILROAD,                                    :
                                                                  :
                             Defendant.                           :
                                                                  :
------------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                 │
│ DATE FILED: 03/18/2015               │
└─────────────────────────────────────┘
```

13-CV-2799 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiff Robert Hananburgh ("Plaintiff") filed this lawsuit against his employer Metro-North Commuter Railroad ("Defendant" or "Metro-North") under the Federal Employee's Liability Act ("FELA"), alleging that Defendant's negligent track inspection and maintenance practices caused injuries he suffered while working as an assistant conductor on one of Defendant's train routes. Defendant now moves for summary judgment and to preclude Plaintiff's proposed expert witness, Raymond Duffany. (Docket No. 31). Plaintiff cross-moves to preclude Defendant's proposed expert witnesses. (Docket No. 27). For the reasons that follow, Defendant's motions for summary judgment and to preclude Plaintiff's proposed expert are DENIED, and Plaintiff's motion to preclude Defendant's expert witnesses is GRANTED.

## BACKGROUND

The following facts — derived from the admissible material submitted by the parties with respect to the three motions — are viewed in the light most favorable to the non-moving party. *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).

Plaintiff first began working for Metro-North on October 6, 2008, as a conductor-in-training.  (Aff. Supp. Def.'s Mot. To Preclude Raymond A. Duffany & Summ. J. (Docket No. 32) ("Rios Aff."), Ex. I ("Hananburgh Depo.") at 7:6-11).  After completing training, and throughout his time of employment until his medical disqualification, Plaintiff served as assistant conductor or conductor, depending on his seniority relative to his coworkers on any given trip. (*Id.* at 6:16-7:5; 7:18-8:2).

On September 2, 2011, Plaintiff was working as an assistant conductor on a train that left Grand Central Terminal at approximately 10:05 p.m., headed for Poughkeepsie.  (*Id.* at 21:8-11; 22:7-17; 24:16-20).  As the assistant conductor, Plaintiff's principal tasks were to collect tickets from seated passengers while walking through the train and to signal the conductor to close the doors when all passengers had embarked at each stop.  (*Id.* at 29:14-30:4).  After leaving the Yankee Stadium/153rd Street stop, Plaintiff was moving through the train to collect tickets, and in the process of opening a door from one car to the other, when he was — in his words — "thrown violently" into the train's outside wall.  (*Id.* at 31:3-32:17).  After Plaintiff got up and walked back down the car, he felt his back "tightening up."  (*Id.* at 41:16-18).  Shortly thereafter, after the train had passed the Tarrytown stop, Plaintiff told the conductor what had happened, and then sat down in one of the passenger cars and attempted to contact the train master and yard master.  (*Id.* at 42:5-43:24).  Upon arriving in Poughkeepsie, passenger Jeff Piontowski assisted Plaintiff with his bag as Plaintiff got off the train.  (*Id.* at 46:18-47:9; Aff. Opp'n Def.'s Mot. To Preclude & Opp'n Summ. J. (Docket No. 38) ("Kantor Aff.") ¶ 9).  Plaintiff's landlord — whom Plaintiff called from the train, sensing that he would not be able to drive with his level of discomfort — then drove Plaintiff to Vassar Brothers Hospital, also located in Poughkeepsie. (Hananburgh Depo. at 45:9-21; 46:23-47:2).

2

At the hospital, Plaintiff was given morphine and was prescribed muscle relaxants and painkillers.  (*Id.* at 48:22-49:10).  While at the hospital, Plaintiff received a phone call from Metro-North Operations Manager James Rasser, who met Plaintiff at the hospital to take an incident statement.  (*Id.* at 49:17-50:15; Rios. Aff., Ex. K ("Rasser Depo.") at 14:3-11).  Rasser then ordered a three-man inspection team to check the train car on which Plaintiff was injured for mechanical defects.  (*Id.* at 16:17-20).  Rasser did not order an inspection of the track, allegedly because he did not know where the accident had occurred and thus "couldn't give . . . the exact milepost."  (*Id.* at 19:4-7).

In the weeks following the incident, Plaintiff made several visits to his primary care doctor, Dr. Laura Vallero, who ordered X-rays and magnetic resonance imaging examinations ("MRIs"), and referred Plaintiff to physical therapy.  (Hananburgh Depo. at 54:18-22; 55:25-56:20, 58:5-14).  The MRIs revealed that Plaintiff had a herniated disk.  (*Id.* at 58:19-59:4).  Plaintiff then began to see a series of specialists, including a neurosurgeon and a pain-management specialist.  (*Id.* at 59:13-18; 60:7-13).  When Plaintiff continued to experience back pain and stiffness in his neck, and began to experience discomfort in his left leg, he visited a Dr. Andrew Hecht in March 2012, who recommended — and subsequently performed — a laminectomy on Plaintiff.  (*Id.* at 64:2-66:13; 67:16-22).  Plaintiff also visited a chiropractor, Dr. Joseph Olmo, beginning in November 2011 — a doctor whom he had previously visited in 2010 for soreness in his back.  (*Id.* at 73:6-74:7).  Since the incident, Plaintiff reports that he has had to stop participating in many of the activities he used to enjoy, such as serving as a volunteer firefighter, and is unable to sit or stand for long periods of time.  (*Id.* at 94:15-95:9).  He also still uses painkillers and muscle relaxants to treat his discomfort.  (*Id.* at 95:2-9).

### DEFENDANT'S SUMMARY JUDGMENT MOTION

**A.  Legal Standards in Reviewing Summary Judgment Motions Generally**

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  An issue of fact qualifies as genuine if the "evidence is such that a reasonable jury could return a judgment for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). Generally, to avoid summary judgment, a party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

**B.  Legal Standards in FELA Cases**

FELA mandates that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."  45 U.S.C. § 51.  The Supreme Court has noted that, at the time FELA was enacted in 1908, Congress was "[c]ognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year," and accordingly "crafted a federal

remedy that shifted part of the human overhead of doing business from employees to their

employers." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (internal quotation marks

omitted). Because "FELA's language on causation . . . is as broad as could be framed," the

Court has recognized that, "in comparison to tort litigation at common law, a relaxed standard of

causation applies under FELA." *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2636 (2011)

(internal quotation marks omitted). In addition to finding that FELA creates liability "for risks

that would be too remote to support liability under common law," *Syverson v. Consol. Rail

Corp.*, 19 F.3d 824, 826 (2d Cir. 1994), the Second Circuit has held that "the right of the jury to

pass on factual issues must be liberally construed," *Williams v. Long Island R.R. Co.*, 196 F.3d

402, 407 (2d Cir. 1999) (internal quotation marks omitted). Accordingly, a case brought under

FELA "must not be dismissed at the summary judgment phase unless there is absolutely no

reasonable basis for a jury to find for the plaintiff." *Syverson*, 19 F.3d at 828.

**C.  Discussion**

As a threshold matter, Defendant argues that Plaintiff's FELA claim is "preempted" by

the Federal Railway Safety Act ("FRSA"), 49 U.S.C. § 20106(a)(2), and accompanying

regulations promulgated by the Federal Railroad Administration ("FRA"), 49 C.F.R. § 213 *et.

seq*. (Mem. Law Supp. Mot. To Preclude Testimony Raymond A. Duffany & Summ. J. (Docket

No. 33) ("Def.'s Mem.") 10-11; Reply Mem. Law Supp. Def.'s Mot. To Preclude Testimony

Raymond A. Duffany & Summ. J. (Docket No. 41) ("Def.'s Reply Mem.") 1-6). Because the

doctrine of preemption has its roots in the Supremacy Clause of the U.S. Constitution, it serves

only to "invalidate[] state laws that interfere with, or are contrary to, federal law." *Sprint

Spectrum L.P. v. Mills*, 283 F.3d 404, 414-15 (2d Cir. 2002) (internal quotation marks omitted).

Because FELA and FRSA are federal statutes, it follows that "FELA cannot be preempted by

FRSA." *Szaroleta v. Metro-N. Commuter R.R.*, No. 07-CV-7639 (KNF), 2008 WL 4681983, at *5 (S.D.N.Y. Oct. 20, 2008).  Defendant's incorrect terminology aside, however, some courts — including the Fifth, Sixth, and Seventh Circuits — "have concluded . . . that the FRSA may, in certain circumstances, preclude a cause of action under FELA." *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 86 (2d Cir. 2006).  Reasoning that it would "defeat FRSA's goal of uniformity" to "treat cases brought under federal law differently from cases brought under state law," *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 777 (7th Cir. 2000), those courts have held that a FELA claim is precluded if an identical state law claim would have been preempted by FRSA's express preemption clause.  *See, e.g.*, *Nickels v. Grand Trunk W. R.R.*, 560 F.3d 426, 430 (6th Cir. 2009); *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001); *Waymire*, 218 F.3d at 777.  The Second Circuit has yet to decide the issue.  *See Tufariello*, 458 F.3d at 86.

The Court respectfully disagrees with the Fifth, Sixth, and Seventh Circuits, substantially for the reasons stated in the persuasive recent opinion of the Honorable Gregory H. Woods in *Henderson v. Nat'l R.R. Passenger Corp.*, — F. Supp. 3d —, No. 13-CV-6792 (GHW), 2015 WL 728094 (S.D.N.Y. Feb. 19, 2015).  *See also Infermo v. N.J. Transit Rail Operations, Inc.*, No. 10-CV-2498 (SRC), 2012 WL 209359, at *6 (D.N.J. Jan. 24, 2012) (holding that the FRSA does not preempt claims under FELA); *Earwood v. Norfolk S. Ry. Co.*, 845 F. Supp. 880, 891 (N.D. Ga. 1993) (same).  As Judge Woods explained, *see Henderson*, 2015 WL 728094, at *5, the Supreme Court has made clear that "courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective," *Morton v. Mancari*, 417 U.S. 535, 551 (1974).  The FRSA contains no "clearly expressed congressional intention" to preclude FELA claims.  As noted, the statute does contain

an express preemption clause, but that clause does not suffice, because "[f]or purposes of deciding whether [a federal statute with an express pre-emption clause] displaces a regulatory or liability scheme in another statute, it makes a substantial difference whether that other statute is state or federal." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2238 (2014).  In fact, "[b]y taking care to mandate express pre-emption of some state laws, Congress if anything indicated it did not intend [the FRSA] to preclude requirements arising from other sources," such as other federal statutes.  *Id.*

Nor does the Fifth, Sixth, and Seventh Circuits' reliance on the FRSA's goal of ensuring that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable" suffice.  *See* 49 U.S.C. § 20106; *Nickels*, 560 F.3d at 429-30; *Lane*, 241 F.3d at 443; *Waymire*, 218 F.3d at 776.  "Congress not infrequently permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important."  *POM Wonderful*, 134 S. Ct. at 2240.  What is more, given "the breadth of [FELA's] statutory language, [its] humanitarian purposes, [and] its accepted standard of liberal construction in order to accomplish those objects," *Urie v. Thompson*, 337 U.S. 163, 180 (1949), it "should not be cut down by inference or implication," *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 892 (8th Cir. 2012) (internal quotation marks omitted).  That is especially true because doing so would leave railroad workers such as Plaintiff "with no legal recourse."  *Myers v. Illinois Cent. R.R. Co.*, 753 N.E.2d 560, 565 (Ill. App. Ct. 4th Dist. 2001); *see also Infermo*, 2012 WL 209359, at *6 ("This Court finds it very problematic to conclude that FRSA so completely occupies the field of railroad safety that the statute could be construed to supersede previously-enacted railroad safety legislation, particularly so as to eliminate the cause of action created by FELA for the purpose of making railroad workers whole for their on-the-job injuries.").   In

short, courts cannot "rewrite the express statutory language of the FRSA by inferring that its regulations preclude covered federal claims under the FELA, in addition to covered state law claims." *Henderson*, 2015 WL 728094, at *5.  It follows that Plaintiff's FELA claim is not precluded by the FRSA.

In light of the foregoing, and mindful of the Court's obligation to "liberally" interpret "the right of the jury to pass on factual issues" in FELA cases, *Williams*, 196 F.3d at 407, it is clear that Defendant's motion for summary judgment must be denied.  "A railroad may be liable under FELA for failure to provide a safe workplace when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees," *Syverson*, 19 F.3d at 826 (internal quotation marks omitted), and when this negligence "played any part at all in bringing about the [employee's] injury," *McBride*, 131 S. Ct. at 2638 (internal quotation marks omitted).  Here, among other things, Plaintiff has marshaled evidence that suggests Defendant was on notice, through a track geometry inspection performed in May 2011, of approximately 351 defects on the nine-mile stretch of track on which Plaintiff's accident occurred — a number of defects that increased to approximately 533 by the time the next biannual track inspection was performed the month after Plaintiff's accident.  *See Sanchez v. Pathmark Stores, Inc.*, No. 04-CV-1159 (GBD) (RLE), 2010 WL 1191633, at *2 (S.D.N.Y. Mar. 8, 2010) ("A report to the defendant about the defect constitutes adequate knowledge of a defect's existence." (internal quotation marks omitted)).  (Kantor Aff., Exs. O & S).  Based on that evidence (which includes the testimony of Raymond Duffany, discussed below), a reasonable juror could conclude that Defendants' failure to remedy the track defects violated its duty to Plaintiff to take reasonable steps to protect against potential hazards in the workplace, and led to the sudden jolt that caused Plaintiff's injury.  *See Gallose v. Long Island*

*R.R. Co.*, 878 F.2d 80, 84-85 (2d Cir. 1989) ("[A]n employer's otherwise reasonable conduct may become unreasonable if the employer, after being informed that a condition is potentially dangerous, fails to investigate and, if necessary, correct the problem." (internal quotation marks omitted)).  The fact that Plaintiff has not identified the precise location of the accident or the particular defect responsible for the accident (*see* Def.'s Mem. 11), does not call for a different conclusion, as the Court cannot say that Plaintiff's failures in that regard mean that "there is absolutely no reasonable basis for a jury to find for the plaintiff."  *Syverson*, 19 F.3d at 828. Accordingly, Defendant's motion for summary judgment must be and is denied.

## DEFENDANT'S MOTION TO PRECLUDE

The Court turns next to Defendant's motion to preclude Plaintiff's proposed expert witness, Raymond Duffany.  The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides, in relevant part that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his opinion if:

> (a) the expert's scientific, technical, or other specified knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the United States Supreme Court defined the "gatekeeping role" of district courts with respect to expert testimony, declaring that "the Rules of Evidence — especially Rule 702 — [ ] assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert* applies with equal force to testimony that is based on "personal knowledge or experience" rather than scientific expertise; further, because "there are many different kinds of experts, and many different kinds of expertise," a court must be

granted "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 151-52 (1999). "Although a district court should admit expert testimony only where it is offered by a qualified expert and is relevant and reliable, exclusion remains the exception rather than the rule." *Vazquez v. City of New York*, No. 10-CV-6277 (JMF), 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014) (internal quotation marks and citation omitted).

Applying those standards, Defendant's motion to preclude Duffany's testimony in its entirety is without merit. Among other things, Duffany has almost thirty years of experience in the railroad industry; at various points, he has been "responsible for all aspects of track rehabilitation and construction" in one region covered by the Consolidated Rail Corporation and "[r]esponsible for the design, maintenance, and construction of . . . various train signaling systems" for the Grand Trunk Western Railroad Company. (Rios Aff., Ex. P ("Duffany Report") at 17-18). Duffany's conclusions — that the number of defects on the stretch of track in which Plaintiff's accident occurred was "excessive" (*id.* at 9), that "the types of defects found by the geometry car would cause or contribute to the rough riding of passenger cars" (*id.* at 9), and that defects of the type uncovered by the track geometry reports may cause unsafe riding conditions in the aggregate, by causing a railroad car to "whip[]" back and forth (Rios Aff., Ex. Q ("Duffany Depo.") 121:24-126:7) — are based on his extensive professional experience with track construction, maintenance, and repair, as well as a review of documents upon which experts in his field reasonably rely, including but not limited to track geometry inspections and testimony by Metro-North engineers. (Duffany Report at 1-2; Duffany Depo. 119:5-23).

In other words, Duffany's conclusions with respect to the cause of Plaintiff's accident are "appropriately based upon [his] extensive experience, education, and training," and "adequately

supported by reliable data, including information of a type reasonably relied upon by experts in the field." *Freitas v. Michelin Tire Corp.*, No. 94-CV-1812 (DJS), 2000 WL 424187, at *2 (D. Conn. Mar. 2, 2000).  They are therefore relevant and admissible.  *See, e.g.*, *id.*; *see also Reyes v. Delta Dallas Alpha Corp.*, No. 92-CV-4418 (AGS), 2000 WL 526851, at *2 (S.D.N.Y. May 2, 2000) (finding expert testimony admissible when the expert's findings were "adequately grounded in the methods and procedures of science, and were based on more than subjective belief or unsupported speculation." (internal quotation marks omitted)).  Ultimately, Defendant's arguments to the contrary — including, for example, its contention that Duffany places undue weight on subjective evidence such as Plaintiff's own account of the incident (Def.'s Mem. 7-8) — go to the weight, not the admissibility, of Duffany's testimony.  *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." (internal citations and quotation marks omitted)).

Although Defendant's motion to preclude Duffany's testimony in its entirety is without merit, two aspects of the motion warrant additional brief discussion.  First, Defendant asserts in its reply memorandum that, while "Duffany . . . argu[es] that Metro-North was negligent because it violated its internal rules which exceed the federal standard of care . . . there is no tort liability if the railroad chooses to exceed the Federal standard of care."  (Def.'s Reply Mem. 3).  The question of whether and to what extent Metro-North's adherence (or lack thereof) to its own internal rules and policies is relevant and admissible is not necessarily straightforward.  *See, e.g.*, *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1102-03 (2d Cir. 1986) (finding that

a district court's reliance on a railroad's violation of its internal rules as probative of negligence was proper); *Schipper v. BNSF Ry. Co.*, No. 07-CV-2249 (JWL), 2008 WL 2783160, at *11 (D. Kan. July 16, 2008) (finding "no support for the argument that a violation of internal safety procedures themselves constitutes negligence per se in the F.E.L.A. context"); *Jones v. Nat'l R.R. Passenger Corp.*, 942 A.2d 1103, 1108 (D.C. 2008) (holding that Amtrak's "unpublished, internal procedures cannot embody the standard of care under a negligence *per se* theory," but instead, "may be admissible as *bearing on* the standard of care" (internal quotation marks omitted)). Although the Court need not answer the question in order to resolve Defendant's motions to preclude or for summary judgment, it will presumably need to do so for trial. Accordingly, each party shall submit a pretrial memorandum addressing the question in conjunction with the Joint Pretrial Order.

Second, the parties dispute the relevance and admissibility of whether and to what extent Metro-North's post-accident investigation into Plaintiff's fall and its surrounding circumstances was adequate. (*Compare* Def.'s Mem. 8 (arguing that "Metro-North's investigation of the incident is irrelevant on the issue of negligence"), *with* Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. & Opp'n Preclude Expert (Docket No. 37) ("Pl.'s Mem.") 16-17 ("[B]y only investigating the inside of the cars, and not interviewing any of the witnesses or taking statements or photographs, the Defendant has ensured that the Plaintiff's efforts to discover causation were handicapped. . . . The shoddy investigation conducted by the Defendant demonstrates a pattern of the ineffective and poor safety culture of Metro-North Railroad."), *and* Duffany Report 8 ("The investigation into this incident was shoddy at best; and, not up to industry standards."); *id*. at 9 ("A reasonable inspection up to industry standards would have explored all potential causes of Mr. Hana[n]burgh's rough ride.")). Defendant is certainly

12

correct that any deficiencies in the post-accident investigation are "not relevant to the issue of whether" it was "negligent in allowing the incident to occur."  *Smith v. Chief Executive Officer*, No. 00-CV-2521 (DC), 2001 WL 1035136, at *5 (S.D.N.Y. Sept. 7, 2001); *see also McLean v. Air Methods Corp.*, No. 12-CV-241 (JGM), 2014 WL 280343, at *5 (D. Vt. Jan. 24, 2014) (finding expert testimony regarding defendant's post-accident investigation to be irrelevant because "it would not assist the jury in determining an actual 'fact in issue,' i.e., whether Corporate Jets negligently caused" the incident in question).  At the same time, there is some authority for the proposition that Defendant's failure to create relevant evidence could support a negative inference against it, because "having created that impediment to accurate fact-finding, it should likewise bear the associated risks."  *Ramirez v. Pride Dev. & Constr. Corp.*, 244 F.R.D. 162, 165 (E.D.N.Y. 2007).  *But see, e.g.*, *Farella v. City of New York*, No. 05-CV-5711 (NRB), 2007 WL 193867, at *2-3 (S.D.N.Y. Jan. 25, 2007) (holding that spoliation sanctions are not applicable where the evidence never existed in the first place, even if the party had a legal duty to collect such evidence by conducting an investigation); *accord Baez v. Delta Airlines, Inc.*, No. 12-CV-3672 (KPF), 2013 WL 5272935, at *10 (S.D.N.Y. Sept. 18, 2013).  On this issue too, the parties shall submit pretrial memoranda in conjunction with their Joint Pretrial Order.

**PLAINTIFF'S MOTION TO PRECLUDE**

Finally, the Court considers Plaintiff's motion to preclude the testimony of Defendant's proposed expert witnesses on the ground that Defendant's disclosures relating to the experts failed to comply with Rule 26 of the Federal Rules of Civil Procedure.  Rule 26 provides that parties intending to present expert testimony at trial must disclose the identity of any witnesses, along with either a written report or — if such a report is not required — "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to

which the witness is expected to testify," "at the times and in the sequence that the court orders."

Fed. R. Civ. P. 26(a)(2).  If a party does not comply with the requirements of Rule 26, a court

may impose sanctions under Rule 37, including precluding the expert testimony.  In deciding

whether to preclude witnesses under Rule 37 due to a violation of Rule 26, a court must consider

"(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the

importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the

opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility

of a continuance."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

   In this case, the initial deadline for the close of expert discovery was January 31, 2014

(Docket No. 7), a deadline that was extended, upon joint motion, to March 20, 2014 (Docket

Nos. 10 & 11).  After the February 26, 2014 pretrial conference, the Court ordered that Plaintiff

was to produce Duffany's expert report to Defendant by April 7, 2014, and that expert discovery

was to be completed by April 21, 2014; the Court explicitly provided that, "[i]f Defendant

intends to designate a rebuttal expert, it shall advise the Court by that same date and seek an

appropriate extension of expert discovery."  (Docket No. 12).  The Court then extended the

deadline for expert discovery to May 30, 2014.  (Docket No. 17).  Despite the clear instructions

to Defendant regarding rebuttal witnesses, it did not disclose to Plaintiff any intention to call

expert witnesses until May 30, 2014, when it sent Plaintiff its Supplemental Response to

Plaintiff's First Set of Interrogatories — originally served on Defendant July 9, 2013 — and

identified four people as experts: Paul Hansen, Harold Ouellette (or another witness from the

Maintenance of Equipment Department), John Wagner, and Matthew Youssef.  (Docket No. 24,

Ex. 1).  Hansen and Wagner were previously deposed by Plaintiff, but as fact witnesses, not as

expert witnesses; neither of the other two witnesses was deposed at all, and Defendant did not provide expert reports for any of the four purported experts.  (Docket No. 24, at 2).

Weighing the four relevant factors, *see, e.g.*, *Design Strategy*, 469 F.3d at 296, the Court concludes that preclusion is indeed warranted under the circumstances.  First, Defendant does not have a good explanation for its failure to comply with the Court's deadlines (or to seek an extension of those deadlines).  Defendant's sole excuse for its late designation of rebuttal witnesses — more than a month after the Court ordered disclosure — is that it was not able to depose Duffany until May 28, 2014, and only then did it discover that Duffany was basing his opinions at least partially on Metro-North's own policies.  (Mem. Law Opp'n Pl.'s Mot. To Preclude Def.'s Fact & Expert Witnesses (Docket No. 39) ("Def.'s Opp'n Mem.") 2).[1]  But Defendant could have, and should have, inferred that Duffany had reviewed all of the discovery in the case, including Metro-North's own policies.  And in any event, to the extent that Duffany's Report was unclear on that score, Defendant could have sought appropriate relief in advance of the deadline for disclosing any rebuttal experts.  Second, by Defendant's own admission, the testimony of the proposed witnesses *as experts* is not central to either Defendant's case or its rebuttal, given that two of the proposed witnesses were deposed as fact witnesses and can testify to matters within their personal knowledge — matters that, given their positions at Metro-North, no doubt include many relevant Metro-North policies and inspection or maintenance procedures.  (*See, e.g.*, Def.'s Opp'n Mem. 4, 6).  Third, if Defendant was allowed to designate the two already deposed fact witnesses as expert witnesses, and introduce two altogether new witnesses as experts, it would create delay in an already prolonged discovery

---

[1]    As discussed above, that testimony may or may not be relevant and admissible at trial.

schedule and prejudice Plaintiff.  Plaintiff would not only have to depose up to four witnesses (either again or for the first time), but he might also need to retain rebuttal experts of his own.

Given all of those considerations, and notwithstanding whether a continuance of this already prolonged litigation would be possible or appropriate, the Court concludes that the appropriate remedy for Defendant's straightforward Rule 26 violation is preclusion.  *See, e.g.*, *Bastys v. Rothschild*, 154 F. App'x 260, 263 (2d Cir. 2005) (summary order) ("[W]here the court had emphatically ordered that *all* discovery, including expert discovery, was to conclude by a specified date; where the court had extended that date on several occasions; where the plaintiff, nevertheless, failed to identify any experts within the specified time and failed to articulate a reasonable explanation for its negligence in the district court; and where excusing the belated disclosure would prejudice the defendants who had, as a consequence of plaintiff's failure to identify experts, not retained any of their own, the district court acted within its discretion in refusing to consider the expert submissions . . . .").  That does not, however, prevent Defendant from questioning Hansen and Wagner as fact witnesses.

## CONCLUSION

For the foregoing reasons, Defendant's motions to preclude Plaintiff's expert witness and for summary judgment are DENIED, and Plaintiff's motion to preclude Defendant's expert witnesses is GRANTED.

**Within thirty days of this Opinion and Order**, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Fed. R. Civ. P. 26(a)(3).  The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.  By the same date, each party

shall submit pretrial memoranda, **not to exceed fifteen pages**, addressing the questions raised above, namely (1) whether and to what extent Metro-North's adherence (or lack thereof) to its own internal rules and policies is relevant and admissible; and (2) whether and to what extent the adequacy of Metro-North's post-accident investigation into Plaintiff's fall and its surrounding circumstances is relevant and admissible.

If this action is to be tried before a jury, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.  Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Fed. R. Civ. P. 51(a)(2)(A).  If this action is to be tried to the Court, proposed findings of fact and conclusions of law shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.  Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed.

Finally, if the parties are interested in another settlement conference before Magistrate Judge Peck, they shall so advise the Court by joint letter as soon as possible.

The Clerk of Court is directed to terminate Docket Nos. 27 and 31.

SO ORDERED.

Date:   March 18, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge